UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAWN MARTIN,<br><br>        Plaintiff,<br><br>    v.<br><br>ANDREW SAUL,<br><br>        Defendant. | Case No. 20-cv-07754-HSG<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 18, 25 |

Defendant Andrew Saul,[1] the former Commissioner of the Social Security Administration ("SSA"), acting in his official capacity, denied Plaintiff Dawn Martin's application for disability insurance benefits ("DIB"). Dkt. No. 1. Plaintiff seeks judicial review of that decision. For the reasons detailed below, the Court **GRANTS** Plaintiff's motion for summary judgment, Dkt. No. 18, **DENIES** Defendant's motions for summary judgment, Dkt. No. 25, and remands this matter to the SSA for further proceedings.

**I.    BACKGROUND**

**A.    Factual Background**

In May 2017, Plaintiff filed an application for DIB under Title II of the Social Security Act (the "Act"), alleging that she became disabled and unable to work as of May 28, 2013. *See* Dkt. No. 15 ("AR") at 24.[2] In her application, Plaintiff listed fibromyalgia, back injury, neck injury, anxiety, depression, foot injury, edema - both hands, and migraines as the conditions that limit her ability to work. *Id.* at 237. Based on this application, the agency denied Plaintiff's claim in July

---

[1] The acting Commissioner of the Social Security Administration is Dr. Kilolo Kijakazi. She is substituted for her predecessor, Andrew Saul, as Defendant in this action under Fed. R. Civ. P. 25(d).
[2] Due to its size, the Administrative Record, filed at Dkt. No. 15, is broken into twelve parts. The Court refers to these documents collectively as the "AR," and cites to its internal pagination.

2017 and again upon reconsideration in September 2017. *Id.* at 120, 130. Plaintiff then appeared before an Administrative Law Judge ("ALJ") in September 2019. *Id.* at 24.

The ALJ determined that Plaintiff's date last insured was December 31, 2016, and followed the five-step sequential evaluation process mandated for disability claims under 20 C.F.R. § 416.920. *See id.* at 1, 21–35. The ALJ ultimately determined that Plaintiff was not disabled as defined by the Act between May 28, 2013, and December 31, 2016, and accordingly denied Plaintiff's request for DIB. *Id.*

Step One requires the ALJ to determine whether the claimant engaged in "substantial gainful activity" during the relevant period. *See* 20 C.F.R. § 416.920(b); *see also* 20 C.F.R. §§ 416.971 *et seq.* "Substantial work activity" is defined as "work activity that involves doing significant physical or mental activities." 20 C.F.R. § 416.972(a). And "gainful work activity," in turn, is defined as "work activity that you do for pay or profit." *Id.* at § 416.972(b). At Step One, the ALJ found that Plaintiff did not engage in substantial gainful activity during the relevant period. AR at 26.

Step Two directs the ALJ to determine whether the claimant has a severe impairment or combination of impairments that significantly limit her ability to work. *See* 20 C.F.R. § 416.920(c). The ALJ found the claimant satisfied this step because her degenerative disc disease of the cervical, thoracic, and lumbar spine constituted severe impairments that limited her ability to perform basic work activities. AR at 27.

Plaintiff alleged numerous other impairments, but the ALJ found that either there was insufficient evidence to establish these impairments as medically determinable, or the evidence showed that the conditions are not severe. *Id.* at 27. Under Social Security Ruling ("SSR")12-2p, the ALJ found that although Plaintiff's medical records reference a diagnosis of fibromyalgia, Plaintiff did not meet the applicable diagnostic criteria. *Id.* Therefore, the ALJ found fibromyalgia to be a non-medically determinable impairment. *Id.* at 27–28.

Under SSR 19-4p, the ALJ found that the evidence did not establish a primary headache disorder. *Id.* at 28. Although an acceptable medical source diagnosed Plaintiff as having migraines, the ALJ found that the "diagnosis is not accompanied by the requisite objective criteria

to support the finding of a primary headache disorder." *Id.* Additionally, the ALJ noted that Plaintiff successfully treated her migraines with medical cannabis starting in early 2016 and at least through 2016, Plaintiff's date last insured. *See id.*

Finally, the ALJ determined that Plaintiff's mental health symptoms, including depression and anxiety, did not have more than a minimal effect on her ability to perform basic work activities and therefore did not constitute a severe impairment under Step Two. *See id.* at 28–29. The ALJ found that Plaintiff had mild limitations due to her mental impairments in (1) interacting with others; (2) maintaining concentration, persistence, and pace; and (3) adapting and managing oneself. *Id.* at 28. The ALJ found that Plaintiff had no limitation in understanding, remembering, and applying information. *Id.* at 28. In determining that the evidence supported no more than mild limitations, the ALJ noted that:

- While the medical records included notations of Plaintiff appearing frustrated, depressed, anxious, or irritated, no treating source noted significant difficulties interacting with Plaintiff nor did Plaintiff allege significant difficulties interacting with others.
- Plaintiff attributed her occasional lack of clarity and trouble focusing primarily to her physical pain and side effects from medications.
- No treating source noted any deficiencies in hygiene or attire or serious behavioral deficits.
- The medical evidence does not document significant or persistent deficits in long-term memory, short-term memory, insight, or judgment.
- Plaintiff was repeatedly noted to have a normal thinking process, and no treating practitioner observed the claimant to be overly distractible or slow.

*Id.* at 28–29.

At Step Three, the ALJ determines whether the claimant's impairment, or combination of impairments, medically "meets or equals" an impairment listed in 20 C.F.R., pt. 404, subpt. P, Appendix. 1. *See* 20 C.F.R. § 416.920(a)(4)(iii), (d); *see also id.* at §§ 416.925, 416.926. "That bureaucratic mouthful means the ALJ must see if the claimant's impairment matches the criteria

3

1  for disabling conditions listed in the regulations." *Petrini v. Colvin*, No. 14-CV-01583-JD, 2015
2  WL 5071931, at *1 (N.D. Cal. Aug. 27, 2015), *aff'd sub nom. Petrini v. Berryhill*, 705 F. App'x
3  511 (9th Cir. 2017) (quotation omitted).  At this third step, the ALJ found against Plaintiff,
4  concluding that none of Plaintiff's impairments, considered singly and in combination, met or
5  medically equaled the criteria of any listing.  AR at 29.

6        The ALJ therefore proceeded to determine Plaintiff's "residual functional capacity"
7  ("RFC") and her ability to perform past relevant work.  *Id.* at 29–30 (citing 20 C.F.R.
8  § 416.920(a)(4)(iv), (e)).  To determine a claimant's RFC, the ALJ must first consider whether
9  there is an underlying medically determinable physical or mental impairment that could
10  reasonably be expected to produce the claimant's pain or other symptoms.  *See* 20 C.F.R.
11  § 416.929; *see also* SSR 16-3p.  The ALJ must consider all impairments, even those that are not
12  severe.  *See id.*; *see also* 20 C.F.R. § 416.945.  Once the underlying impairment has been shown,
13  the ALJ must then evaluate the intensity, persistence and limiting effects of claimant's symptoms.
14  *See* 20 C.F.R. § 416.929.

15        Here, the ALJ reviewed Plaintiff's testimony and found that her medically determinable
16  impairments could reasonably be expected to cause her alleged symptoms, but "the claimant's
17  statements concerning the intensity, persistence and limiting effects of these symptoms are not
18  entirely consistent with the medical evidence and other evidence in the record . . . ."  AR at 30.
19  The ALJ explained that the objectively demonstrated symptoms, "regardless of precise etiology"
20  were incorporated into Plaintiff's RFC.  *Id.* at 28.  Based on Plaintiff's testimony, medical records,
21  and medical opinions, the ALJ found that through the date last insured Plaintiff's "conditions were
22  sufficiently responsive to treatment such that she remained capable of performing a reduced range
23  of sedentary work."  *Id.* at 30.  Specifically, the ALJ found that Plaintiff could perform "sedentary
24  work as defined in 20 C.F.R. 404.1567(a), except she needs a sit stand option at will as necessary;
25  there should be no work that involves climbing ladders, ropes, or scaffolding; no work at heights
26  or with heavy or hazardous machinery; and no professional driving, mostly as a safety

4

precaution." *Id.* at 29–30.[3]

Lastly, at Step Five, the ALJ found that as of her last insured date, although she could no longer perform her past relevant work, Plaintiff was capable of performing other work in the national economy, including as an order clerk for food and beverages, a leaf tier for tobacco leaves, or a telephone solicitor. *Id.* at 33–34. The ALJ thus concluded that Plaintiff is not disabled under the Act. *See id.* at 35.

The Appeals Council denied Plaintiff's request for review of the ALJ's decision, making the ALJ's decision final. *See id.* at 1–3. Plaintiff then filed this case under 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Court has jurisdiction to review final decisions of the Commissioner. *See* 42 U.S.C. § 405(g) ("The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."). The Court may disturb the Commissioner's decision to deny benefits only if the decision is not supported by substantial evidence or is based on legal error. *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018); *see also Biestek v. Berryhill,* 139 S. Ct. 1148, 1152 (2019) ("The agency's factual findings . . . are 'conclusive' in judicial review of the benefits decision so long as they are supported by 'substantial evidence.'" (quoting 42 U.S.C. § 405(g))). Under the substantial evidence standard, the Court examines the existing administrative record and asks if it contains "sufficient evidence" to support the agency's factual determinations. *Biestek*, 139 S. Ct. at 1154. The threshold is not high: "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). "The evidence must be more than a mere scintilla, but may be less than a preponderance." *Molina v. Astrue*, 674 F.3d 1104, 1110–11 (9th Cir. 2012) (quotation omitted). "Where the evidence is susceptible to more than one rational

---

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

5

interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

The Court must consider the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989). The ALJ is responsible for making determinations of credibility and for resolving evidentiary ambiguities, including conflicting medical testimony. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Additionally, the Court "may not reverse an ALJ's decision on account of an error that is harmless. The burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Molina*, 674 F.3d at 1111 (quotations omitted).

## III. DISCUSSION

The Court finds that the ALJ's conclusions at Step Two that Plaintiff did not have severe mental impairments or medically determinable fibromyalgia are supported by substantial evidence, and that her failure to address Ehlers-Danlos syndrome was not improper. The Court further finds that the ALJ's conclusion that certain medical opinions by treating physician Michael Moskowitz were unpersuasive was also supported by substantial evidence. However, the Court finds that the ALJ erred in not specifying what in Plaintiff's subjective symptom testimony it rejected and why, and remands on this limited issue.

### B. Step Two

Plaintiff argues that the ALJ erred at Step Two by failing to consider mental conditions, fibromyalgia, and Ehlers-Danlos syndrome as severe impairments. *See* Dkt. No. 18 at 17–24. "Step two is . . . a threshold determination meant to screen out weak claims." *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017). "It is not meant to identify the impairments that should be taken into account when determining the RFC." *Id.* In general, Plaintiff bears the burden of providing reliable evidence to establish the existence of medically determinable impairments. *See* 20 C.F.R. § 404.1512(a). Plaintiff also bears the burden of showing that her impairment is severe, meaning that the symptoms affect her ability to "perform basic work activities." *See Edlund v. Massanari*, 253 F.3d 1152, 1159–60 (9th Cir. 2001).

6

1    As an initial matter, it is not clear how the ALJ's alleged error at this stage was harmful
2    given that Step Two is "a de minimis screening device" to "dispose of groundless claims." *Webb*
3    *v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005). The ALJ here found in Plaintiff's favor,
4    concluding that she had a medically severe impairment and proceeding to the next step. The Ninth
5    Circuit has held that where Step Two is decided in a plaintiff's favor, she "could not possibly have
6    been prejudiced" and "[a]ny alleged error is therefore harmless . . . ." *Buck*, 869 F.3d at 1049.
7    Plaintiff argues that disregarding these conditions affected the ALJ's decisions at subsequent
8    steps. *See* Dkt. No. 26 at 9. But the ALJ explicitly stated that she incorporated Plaintiff's
9    symptoms "from whatever etiology" and "regardless of precise etiology" into the RFC evaluation
10   and in limiting Plaintiff to less than a full range of work. *See* AR at 28; *Yvonne M. v. Kijakazi*,
11   No. 21-cv-05550-TSH, 2022 WL 3702103, at *6 (N.D. Cal. Aug. 26, 2022) (finding harmless
12   error where ALJ considered fibromyalgia limitations in the RFC despite concluding it was not
13   medically determinable).
14   Regardless, the Court finds the ALJ's findings at Step Two were supported by substantial
15   evidence.

### i.     Mental Impairments

17   To determine whether a claimant has a severe mental impairment at Step Two, the ALJ
18   first evaluates a claimant's "pertinent symptoms, signs, and laboratory findings to determine
19   whether [claimant has] a medically determinable mental impairment[]." 20 C.F.R.
20   §§ 404.1520a(b)(1), 416.920a(b)(1). If the ALJ finds that the claimant does have a medically
21   determinable mental impairment, it next rates "the degree of functional limitation resulting from
22   [claimant's] impairment." 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2). Rating the degree of
23   functional limitation is a highly individualized process that requires the ALJ to consider all
24   relevant evidence to determine the extent to which a claimant's impairment interferes with his or
25   her "ability to function independently, appropriately, effectively, and on a sustained basis." 20
26   C.F.R. §§ 404.1520a(c), 416.920a(c). There are four broad functional areas in which the ALJ will
27   rate the degree of functional limitation: "Understand, remember, or apply information; interact
28   with others; concentrate, persist, or maintain pace; and adapt or manage oneself." *Id.* The ALJ

1  rates the degree of limitation in each of the four areas using a five-point scale: "None, mild,
2  moderate, marked, and extreme." *Id.*; *see also Hoopai v. Astrue*, 499 F.3d 1071, 1077–78 (9th
3  Cir. 2007) ("[T]he ALJ is required to rate the degree of functional limitations in four areas … .
4  The ALJ clearly met this requirement by rating and assessing [claimant's] limitations in each of
5  these four functional areas. The ALJ was not required to make any more specific findings of the
6  claimant's functional limitations.").

7  Here, the ALJ found that Plaintiff's mental impairments did not cause more than minimal
8  work-related limitations, and were therefore not a severe impairment at Step Two. The ALJ noted
9  that Plaintiff occasionally reported symptoms of depression and anxiety, and that Dr. Moskowitz
10 diagnosed her with generalized anxiety disorder and depression secondary to chronic pain
11 disorder. AR at 28; *see also id.* at 481. As noted above in Section I.A., the ALJ determined that
12 the "evidence supports no more than mild limitations in the four broad areas of mental
13 functioning, and thus the claimant does not have a severe mental impairment." *Id.* at 29.

14 Plaintiff argues that the ALJ improperly characterized the evidence regarding her mental
15 impairments because her treatment records "consistently noted severe symptoms of depression and
16 anxiety." *See* Dkt. No. 18 at 18. In support of her argument, Plaintiff cites dozens of pages of
17 treatment records noting that Plaintiff suffered from anxiety and depression. *See id.* at 18–19.

18 Consistent with those records, the ALJ found that Plaintiff *had* a medically determinable
19 mental impairment prior to her date last insured, and acknowledged that Plaintiff reported
20 symptoms of depression and anxiety. *See* AR at 28–29. Despite Plaintiff's protests to the
21 contrary, the Court finds that the ALJ had sufficient evidence to conclude that Plaintiff had no
22 more than mild limitations in the four broad areas of mental functioning.

23 First, regarding understanding, remembering, and applying information, the ALJ found
24 Plaintiff had no limitations. *Id.* at 28. The ALJ noted that "the medical evidence does not
25 document significant or persistent deficits in long-term memory, short-term memory, insight, or
26 judgment." *Id.* Treatment notes from Plaintiff's regular doctor visits between September 2013
27 and December 2016 support the ALJ's findings and include frequent statements that Plaintiff
28 exhibited a normal thinking process, an intact memory, good insight, and good judgment. *See,*

8

*e.g.*, *id.* at 335 (December 16, 2016), 355 (May 23, 2016), 425 (October 22, 2015), 437 (May 27, 2015), 441 (November 18, 2014), 461 (April 18, 2014), 473 (September 17, 2013). Considering the record as a whole, the Court finds that substantial evidence supports the ALJ's finding of no limitation in understanding, remembering, and applying information.

Second, regarding interacting with others, the ALJ found Plaintiff had a mild limitation. As explained by the ALJ, Plaintiff "did not allege significant difficulties interacting with others" and "no treating source noted significant difficulties interacting with the claimant." *Id.* at 28. Although Plaintiff in March 2017 reported difficulty with her father because he is "explosive and unpredictable," *id.* at 333, she also reports having friends and having lived with someone for about four years, *see id.* at 45, 377. Considering the record as a whole, the Court finds that substantial evidence supports the ALJ's finding of a mild limitation in interacting with others.

Third, regarding maintaining concentration, persistence, and pace, the ALJ found Plaintiff had a mild limitation. Plaintiff testified that she sometimes had trouble focusing and thinking clearly. *See id.* at 67–69. The ALJ explained that "she attributed this primarily to her physical pain and side effects from medications as opposed to a mental impairment." *Id.* at 28. The ALJ also highlighted that "no treating practitioner observed the claimant as overly distractible or slow[.]" Reviewing Plaintiff's medical records, her treatment notes also regularly noted her as having a normal thinking process between 2013 and 2016. *See, e.g.*, *id.* at 335 (December 16, 2016), 355 (May 23, 2016), 425 (October 22, 2015), 437 (May 27, 2015), 441 (November 18, 2014), 461 (April 18, 2014), 473 (September 17, 2013). Considering the record as a whole, the Court finds that substantial evidence supports the ALJ's finding of a mild limitation in concentration, persistence, and pace.

Fourth, regarding adapting or managing herself, the ALJ found Plaintiff had a mild limitation. The ALJ reasoned that while there was evidence of fluctuating symptoms due to life stressors, no treating source had noted deficiencies in hygiene or attire, serious problems being aware of normal hazards and taking appropriate precautions, or serious behavioral deficits. *Id.* at 29. Treatment notes from the relevant period state that Plaintiff was oriented, had a normal thinking process, and exhibited good judgment. *See, e.g.*, *id.* at 335 (December 16, 2016), 355

9

(May 23, 2016), 425 (October 22, 2015), 437 (May 27, 2015), 441 (November 18, 2014), 461 (April 18, 2014), 473 (September 17, 2013). The treatment notes also state that Plaintiff was consistently "neatly groomed," *e.g.*, *id.* at 339, traveled to visit her parents in Florida repeatedly, *id.* at 333, 341, 645, worked on a project with her father, *id.* at 645, and engaged in location scouting for an independent filmmaker, *id.* at 622. Considering the record as a whole, the Court finds that substantial evidence supports the ALJ's finding of a mild limitation in adapting or managing herself.

The ALJ also considered medical opinion evidence from two reviewing psychologists. Dr. Robert Liss opined that Plaintiff was able to do simple tasks and sustain unskilled work, while Dr. J. Schnitzler opined Plaintiff had no medically determinable mental impairment. The ALJ found Dr. Schnitzler's opinions more persuasive than Dr. Liss's. *Id.* at 29. Still, the ALJ found that Plaintiff had a medically determinable mental impairment and noted that the occupations proposed by the vocational expert fit within even the limitations proposed by Dr. Liss. These medical opinions further support the ALJ's determination.

In sum, substantial evidence supports the ALJ's finding that Plaintiff does not have a severe mental impairment.

### ii. Fibromyalgia

SSR 12-2p provides guidance for evaluating fibromyalgia, which is not a listed impairment. An ALJ "cannot rely upon [a] physician's diagnosis alone." SSR 12-2p. The evidence must also show that the claimant meets either the 1990 American College of Rheumatology (ACR) Criteria for the Classification of Fibromyalgia or the 2010 ACR Preliminary Diagnostic Criteria. Under the 1990 criteria, the evidence must show (1) "a history of widespread pain" in all quadrants of the body that has persisted for at least three months, (2) at least 11 positive tender points, found bilaterally and above and below the waist; and (3) evidence that other disorders which could cause the symptoms were excluded. Under the 2010 criteria, the evidence must show (1) a history of widespread pain; (2) repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions; and (3) evidence that other disorders that could cause the symptoms were excluded.

The ALJ found there was insufficient evidence to establish fibromyalgia as a medically determinable impairment under either the 1990 or 2010 criteria. AR at 27–28. Plaintiff argues that the record contains evidence meeting the 2010 criteria and cites dozens of pages of treatment notes documenting fatigue, depression, headaches, anxiety, and other symptoms. *See* Dkt. No. 18 at 20. Even if Plaintiff met the requirements of widespread pain and repeated manifestations of fibromyalgia signs, there is no evidence in the record that would satisfy the third requirement under both the 1990 and 2010 criteria that a physician "rule out other possible causes of a claimant's pain." *Ford v. Saul*, 950 F.3d 1141, 1155 n.7 (9th Cir. 2020) (finding ALJ properly rejected fibromyalgia diagnosis where a physician did not rule out other possible causes). Contrary to Plaintiff's assertion, Dr. Eddie Mozen did not "confirm" a diagnosis of fibromyalgia; Dr. Mozen was an emergency room physician who saw Plaintiff for abdominal pain and noted fibromyalgia as part of her reported medical history. *See* AR at 311. The tests at the emergency room were performed to assess Plaintiff's abdominal pain, not to rule out causes for her other symptoms—a subsequent CT scan showed pancreatic cysts and a distended colon. *Id.* at 349. As the ALJ noted, much of the evidence supports the conclusion that Plaintiff's pain was attributable to degenerative changes of her spine. *See, e.g.*, *id.* at 318, 319–20, 321–22, 479, 689–90, 691–92.

In sum, substantial evidence supports the ALJ's conclusion that fibromyalgia was not a medically determinable impairment.

### iii. Ehlers-Danlos Syndrome

Plaintiff argues that the ALJ erred in not addressing her diagnosis of Ehlers-Danlos syndrome at Step Two. Dkt. No. 18 at 23. The ALJ noted in her evaluation of Plaintiff's RFC that Dr. Moskowitz diagnosed her with Ehlers-Danlos syndrome ("EDS") in 2018 but found the evidence "too remote to be particularly relevant to the claimant's functioning prior to December 31, 2016." AR at 31. Plaintiff argues that EDS must have been present prior to her last insured date in 2016 regardless of when it was diagnosed. While Plaintiff is not confined to evidence prior to her last insured date, it is unclear how Dr. Moskowitz's later belief that Plaintiff had EDS would affect the ALJ's analysis of Plaintiff's symptoms and limitations as they presented during

11

the relevant period. Further, there is certainly no substantial evidence in the record that would allow the ALJ to evaluate EDS, a diagnosis raised by Dr. Moskowitz without explanation and without any other support in the record.

In sum, the ALJ's findings at Step Two were supported by substantial evidence, and because the ALJ found in Plaintiff's favor and expressly incorporated her symptoms into subsequent steps, any error at this step was harmless.

### B. Dr. Moskowitz's Opinions

Plaintiff also argues that the ALJ improperly discredited the opinions of Dr. Moskowitz. Dkt. No. 18 at 26–28. The Court finds that the ALJ's assessment of Dr. Moskowitz's opinions was supported by substantial evidence.

For claims filed on or after March 27, 2017, like the one here, an ALJ will no longer "defer or give any specific evidentiary weight . . . to any medical opinion(s)" including those from treating physicians. 20 C.F.R. § 416.920c(a); *see* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5867–68 (Jan. 18, 2017). The Ninth Circuit has confirmed that these changes to the SSA's regulations "displace our longstanding case law requiring an ALJ to provide 'specific and legitimate' reasons for rejecting an examining doctor's opinion." *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). "For claims subject to the new regulations, the former hierarchy of medical opinions—in which we assign presumptive weight based on the extent of the doctor's relationship with the claimant—no longer applies." *Id.* Now, an ALJ's decision to discredit a medical opinion must simply be supported by substantial evidence. *Id.*

In reviewing medical opinions, an ALJ must "articulate . . . how persuasive" it finds "all of the medical opinions" based on several factors. 20 C.F.R. § 404.1520c(b). The ALJ must address the two most important factors: supportability and consistency. *Id.* Supportability is "the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Woods*, 32 F.4th at 791 (quoting 20 C.F.R. § 404.1520c(c)(1)). Consistency is "the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Id.* at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)). An ALJ may, but is not required to, explain how other factors were considered, including the

12

source's relationship with the claimant, the length and purpose of the treatment relationship, the frequency of examinations, and the source's specialization. 20 C.F.R. § 404.1520c(b)(2), (c).

In determining Plaintiff's RFC, the ALJ stated that she found certain opinions by Dr. Moskowitz unpersuasive. AR at 32–33. Notably, the ALJ found a reviewing physician's opinion that Plaintiff could perform medium work unpersuasive as well, ultimately concluding that Plaintiff had a significantly limited RFC of sedentary work with the option to sit or stand at will. *Id.* at 31–32. While the ALJ in effect agreed with Dr. Moskowitz that Plaintiff could not perform medium work, the ALJ found unpersuasive his statements that fine motor movement "sets off her neck," that she is unable to leave her home for extended periods because of depression, and that she is unable to work.[4] *Id.* at 32–33.

The ALJ properly addressed the supportability and consistency factors as required and her conclusion is supported by substantial evidence. *Id.* at 32 (noting the opinions are "unsupported by the totality of the record" and "inconsistent with the evidence"). The ALJ found Dr. Moskowitz's opinions vague and "inconsistent with his own contemporaneous treatment notes," which showed largely unchanged physical findings and good response to treatment. AR at 33. Though the record reflects neck pain, Dr. Moskowitz's treatment notes during the relevant period do not document an inability to leave the home or perform fine motor movements, and Plaintiff herself did not identify either limitation. As the ALJ noted, Plaintiff's cervical spine imaging was unremarkable. *Id.* at 319–20, 694–95. And while the treatment notes do reflect reports of symptoms of anxiety and depression, which the ALJ acknowledged and incorporated at Step Two, the ALJ's conclusion that Plaintiff did not exhibit "persistent mental status deficits" is supported for the reasons described above in Part III.B.i. The ALJ correctly noted that Plaintiff did not describe a debilitating mental impairment and testified that back pain was her impetus for filing a claim. *Id.* at 52.

---

[4] The ALJ noted that Dr. Moskowitz's opinion that Plaintiff cannot work was "reserved to the Commissioner." AR at 33. This Court notes that the ALJ may not discredit a medical opinion simply because the source also rendered an opinion an on ultimate disability. *See McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011) ("A treating physician's evaluation of a patient's ability to work may be useful or suggestive information[.]"). But here the ALJ gave other valid reasons for discounting Dr. Moskowitz's opinions.

The question is not whether Plaintiff exhibited symptoms at all, but rather whether it was proper for the ALJ to discredit Dr. Moskowitz's opinions about Plaintiff's ultimate limitations in light of the totality of the record. Here, it was.

### C. The ALJ's Credibility Finding

However, the Court finds that the ALJ committed legal error in not adequately specifying what part of Plaintiff's subjective testimony she found not credible, and explaining the basis for that conclusion, and remands on this limited issue.

Where, as here, an ALJ determines that a claimant "is not malingering and has provided objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms she alleges, the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so." *Brown-Hunter v. Colvin*, 806 F.3d 487, 488–89 (9th Cir. 2015). The Ninth Circuit in *Brown-Hunter* stated:

> We hold that an ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination. To ensure that our review of the ALJ's credibility determination is meaningful, and that the claimant's testimony is not rejected arbitrarily, we require the ALJ to specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination.

*Id.* at 489. Thus, to satisfy the "clear and convincing reasons" requirement, "[g]eneral findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* at 493 (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir.1998)).[5] Failure to identify the testimony found not credible is legal error. *Id.* at 494.

Here, the ALJ stated summarily that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." AR at 30.

---

[5] Defendant argues, to preserve its position for any potential appeal, that the "clear and convincing reasons" standard is inconsistent with the substantial evidence standard under 42 U.S.C. § 405(g). *See* Dkt. No. 25 at 19 n.4. As Defendant acknowledges, this Court is bound by Ninth Circuit precedent.

14

The ALJ proceeded to summarize the medical evidence that formed the basis of the RFC finding. *Id.* at 30–31. But that is the precise approach that the Ninth Circuit deemed insufficient in *Brown-Hunter*. Because the ALJ "failed to identify the testimony she found not credible, she did not link that testimony to the particular parts of the record supporting her non-credibility determination. This was legal error." *Brown-Hunter*, 806 F.3d at 494; *see also Karl M. v. Kijakazi,* No. 20-CV-06642-DMR, 2022 WL 875653, at *3–4 (N.D. Cal. Mar. 24, 2022) (remanding for failure to identify which specific testimony was not credible).

Defendant argues that the ALJ's reasons for discrediting Plaintiff's testimony—that her testimony was inconsistent with objective medical evidence and that her impairments were responsive to treatment—were sufficiently specific. *See* Dkt. No. 25 at 19–20. In carefully reviewing the ALJ's decision, however, it is apparent that the ALJ "did not specifically identify any such inconsistencies; she simply stated her non-credibility conclusion and then summarized the medical evidence supporting her RFC determination." *Brown-Hunter*, 806 F.3d at 494. Courts in this district have found the conclusory language used by the ALJ here insufficient. *See, e.g.*, *Chappell v. Saul*, No. 4:20-CV-05642 YGR, 2021 WL 3493749, at *7 (N.D. Cal. Aug. 9, 2021) (finding the same language insufficient and remanding). The ALJ's order thus did not meet the Ninth Circuit's standard on this point.

Further, the Court may not draw reasonable inferences regarding inconsistencies from the ALJ's summary of the evidence, as "the credibility determination is exclusively the ALJ's to make, and ours only to review." *Brown-Hunter*, 806 F.3d at 494. We may not take "an unspecified conflict" and "comb the administrative record to find specific conflicts." *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014). It is the ALJ's responsibility to "specify which testimony she finds not credible, and then provide clear and convincing reasons" for rejecting it. *Brown-Hunter*, 806 F.3d at 489.

The Court cannot find the ALJ's error harmless, as crediting Plaintiff's testimony would likely have affected the RFC finding. Plaintiff testified that she lies down up to ten times per day and has been doing so for years. AR at 72. There is at least some evidence tending to support this claim, *id.* at 685, though ultimately this issue poses a credibility question. When questioned by

15

the ALJ, a vocational expert stated that someone who needed to lie down ten times a day for ten to fifteen minutes apiece "would not be able to maintain employment," *id.* at 93, and that needing more than 15 percent off-task time "would preclude all work," *id.* at 95. Plaintiff also testified that while her pain medications made her pain "tolerable," they did not change her limitations—i.e., her ability to sit or stand. *Id.* at 72–73. Thus, crediting Plaintiff's testimony (depending on what part of it the ALJ found not credible) may have changed the ALJ's evaluation of Plaintiff's RFC and ability to perform the occupations identified by the vocational expert.

## IV.  CONCLUSION

In sum, the Court finds that the ALJ's decisions at Step Two and discrediting of certain medical opinions were supported by substantial evidence, but finds the ALJ erred in not identifying the basis for finding any particular part of Plaintiff's testimony not credible. The Court **GRANTS** Plaintiff's motion for summary judgment, Dkt. No. 18, and **DENIES** Defendant's motion for summary judgment, Dkt. No. 25. The Court REMANDS this case to the Social Security Administration for further proceedings consistent with this order. The Clerk is directed to enter judgment in favor of Plaintiff and close the case.

**IT IS SO ORDERED.**

Dated:   10/12/2022

HAYWOOD S. GILLIAM, JR.
United States District Judge